## THE YAYE MARU.

## THE WAR LARK.

### (District Court, D. Maryland.　May 4, 1920.)

1. **Salvage ☞7—Lashing colliding vessels together to prevent bumping not salvage service.**

   Where vessels at anchor in the harbor collided during a strong wind, and were lashed together to prevent bumping or dragging, the steamer at fault was liable for the damage done, but not for salvage services, where neither steamer had a fire under her main boilers, enabling her to get under way, as the injured steamer could not, with safety to herself, have done anything else.

2. **Collision ☞114—Allowance to charterer not recoverable, unless compellable.**

   Though the owner of a steamship under a time charter providing for the suspension of payment of hire during breakdowns, etc., causing loss of time, makes an allowance to the charterer for the time required for repairs due to a collision, it cannot recover such allowance from the vessel responsible for the collision, unless the charterer could have compelled such allowance.

3. **Shipping ☞49(3)—Breakdown clause suspends hire during period of unseaworthiness for present purpose.**

   A clause in a charter providing that in case of loss of time from breakdown or other causes preventing the full working of the vessel, the payment of hire shall cease for the time lost suspends the hire whenever the charterer loses time in consequence of the unseaworthiness of the ship, but not where the ship is fit for the only use to which the charterer has present occasion to put her, though temporarily unseaworthy for other purposes.

4. **Collision ☞112—Allowance to charterer for time of repairs not recoverable, in view of embargo.**

   Where a steamer, injured in a collision, was at the time in harbor awaiting a cargo of coal, which, because of an embargo, she did not obtain for two months after repairs were completed, the charterer was not entitled to an allowance for the time lost in making repairs under a breakdown clause in the charter, and the owner could not recover the amount allowed from the vessel at fault.

In Admiralty. Libel by A. Suna, master of the Japanese steamship Yaye Maru, against the British steamship War Lark, her boats, engines, etc. Decree for libelant for part of the amount claimed.

George Forbes, of Baltimore, Md., for libelant.

W. H. McGrann, of New York City, Robert W. Williams, of Washington, D. C., Ritchie, Janney & Stuart, of Baltimore, Md., and Kirlin, Woolsey & Hickox, of New York City, for respondent.

ROSE, District Judge. On November 5, 1919, the Japanese steamship Yaye Maru and the British steamship War Lark were at anchor in the Baltimore harbor at a safe distance apart. During the morning of that day, a northwest wind grew in force until, slightly before noon, it became quite strong. Both ships were light, and felt the full force of the breeze, but with prompt and seamanlike dispositions neither should have dragged its anchor to any serious extent. Nevertheless the War Lark came down upon the Yaye Maru and did her

some damage. Neither of them could get under way, as there was no fire under the main boilers of either. After they had been along side of each other for some time, at the War Lark's suggestion, they were lashed together to prevent further bumping or dragging. They so remained until a tug, summoned by wireless, took the War Lark off. I am satisfied that the latter was solely to blame, and I do not understand that this finding is seriously questioned.

[1] The Yaye Maru claims that, in permitting the War Lark to be tied to her, she rendered a salvage service. The making of the ships fast to each other was a proper precaution to prevent further damage to both. The Yaye Maru could not, with safety to herself, have done anything else. She could not get out of the War Lark's way, nor could the War Lark pull off from her. No salvage was earned, but the War Lark is bound to make good the damage done.

There is no controversy over the repair bills and the other ordinary collision expenses. The one dispute is as to whether the Yaye Maru is entitled to some $20,000, in the nature of demurrage, for the fraction over six days between the collision and the completion of her repairs. She was under a time charter, which contained a breakdown clause reading as follows:

"That in the event of the loss of time from deficiency of men or stores, fire, breakdown, or damage to hull, machinery, or equipment, grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination or painting bottom, or by any other cause preventing the full working of the vessel, the payment of hire shall cease for the time thereby lost."

She had come to Baltimore for a cargo of coal, but before the collision a government embargo on shipments of that commodity had been imposed. It was not lifted until the middle of January. As a result the Yaye Maru did not get away until January 24th, although her repairs had been completed on the 11th of the preceding November. In point of fact, the collision did not delay her at all; but her charterer promptly claimed that she was off hire from the time she collided until she left the repair yard.

[2] The first hearing of the case was in December. At that time the War Lark denied all liability for delay. On the 25th of the following January the owner of the Yaye Maru allowed her charterer some $20,000 as off hire. It is admitted that its action in so doing cannot affect the rights of the War Lark. It is consequently unnecessary to inquire or to speculate as to why the charterer found the owner so yielding, for it may not recover from the War Lark, unless the payment was one the charterer could have compelled it to make.

[3] Where there is such a breakdown clause as that here in issue, hire is suspended whenever the charterer loses time in consequence of the unseaworthiness of the ship. It does not appear that under such circumstances the courts have ever attempted to ascertain whether in fact the money lost to the charterer equaled the amount paid it, although Lords Watson and Hershell in Hogarth v. Miller, Law Reports, 1891 App. Cases, 48, suggested that such an inquiry might sometimes be made. It is at least equally true that by the express words

of the clause it cannot become operative unless time be lost, and whether such loss has occurred is determined by practical and not by theoretical tests. A ship may be temporarily unseaworthy for some or many purposes, but no time is lost to the charterer if she is still fit for the only use to which he then has occasion to put her, as, for example, for discharging cargo. Lake S. S. Co. v. Bacon (D. C.) 129 Fed. 819, affirmed 145 Fed. 1022, 74 C. C. A. 476; Hogarth v. Miller, supra; S. S. Knutsford Co., Ltd., v. Barber & Co., 261 Fed. 866, —— C. C. A. ——.

[4] At the time of the collision, and long after the damage done by it was made good, the only use which the charterer could make of the Yaye Maru was to have her await the lifting of the embargo, and that she could do. She may have a decree for the collision damage, and the incidental expenses she was put to thereby, but not for loss of time or for salvage.